# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES KEVIN O'BRIEN, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No.<br>) 17-12333-FDS<br>) |
| NANCY A. BERRYHILL, Acting<br>Commissioner of the Social Security<br>Administration, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REVERSE OR REMAND AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

**SAYLOR, J.**

This is an appeal of a final decision of the Commissioner of the Social Security Administration ("SSA") denying the application of plaintiff James O'Brien for Social Security Disability Income ("SSDI") benefits. O'Brien appeals the denial of his application on the ground that the decision is not supported by substantial evidence as required by 42 U.S.C. § 405(g). Specifically, O'Brien contends that the administrative law judge ("ALJ") erroneously concluded that he was not disabled and failed to consider cervical injuries he suffered after December 31, 2012, the date he was last insured.

Pending before this Court are plaintiff's motion to reverse or remand the decision of the Commissioner and defendant's motion to affirm the decision of the Commissioner. For the reasons stated below, the decision will be affirmed, and plaintiff's motion to reverse or remand will be denied.

I.  **Background**

   A.  **Factual Background**

   1.  **Medical Evidence Prior to Date Last Insured**

James K. O'Brien was 51 years old on December 31, 2012, the date that he was last insured. (A.R. 280).[1] He dropped out of high school in the ninth grade. (A.R. 59). He lives with his wife, Faith. (A.R. 494). Prior to his injury, he worked as a carpenter. (A.R. 402-04). He last reported annual earnings of $18,647.09 in 2007. (A.R. 277).

On August 29, 2007, O'Brien went to the North Shore Medical Center after experiencing acute lower-back pain following heavy lifting at work. (A.R. 388). He denied having pain or tenderness in his spine. (*Id.*). A physical examination revealed low lumbar tenderness, but he walked with normal coordination and gait and had no neurological symptoms. (A.R. 388-89). He was prescribed Percocet and Valium and instructed to return if his symptoms worsened. (A.R. 389).

On September 4, 2007, O'Brien saw Dr. Louis Casale complaining of severe back pain. (A.R. 396). Dr. Casale diagnosed an acute lumbar sprain and prescribed various pain medications and encouraged him to walk. (*Id.*). O'Brien returned the following week and reported that his pain was unchanged. During the follow-up visit, Dr. Casale recommended physical therapy and suggested a MRI could be appropriate. (A.R. 395). He also advised that O'Brien should not return to work, which would have required further heavy lifting. (*Id.*). After a few weeks, O'Brien reported that he felt the physical therapy helped. An MRI revealed mild

---

[1] To be eligible for SSDI benefits, a claimant must be "insured for disability" at the time he became disabled. A claimant is insured for disability in any quarter in which he was fully insured and had "at least 20 [quarters of coverage] in the 40-quarter period . . . ending with that quarter." 20 C.F.R. § 404.130(b). Based on O'Brien's administrative record, he last met the SSDI insured status requirement on December 31, 2012. Thus, he had to show that he was disabled as of that date to qualify for SSDI benefits.

intervertebral osteochondrosis with posterior bulging discs at the L2-L3 vertebrae. (A.R. 394, 397).

In November 2007, O'Brien consulted with Dr. Peter Anas, an orthopedic surgeon. (A.R. 409). Dr. Anas conducted a physical examination, which revealed that O'Brien had limited forward flexion due to muscle spasms. (*Id.*). However, he could walk on his heels and toes, his motor and sensory functions were intact, and his straight leg raises were negative. (*Id.*). Dr. Anas diagnosed a lumbosacral strain and a probable annular tear. (*Id.*). Dr. Anas noted that O'Brien's long-term prognosis for recovery was excellent and that surgical intervention was not warranted. (*Id.*). In addition, Dr. Anas recommended a physiatry supervised rehabilitation and strengthening program. (*Id.*).

In December 2007, O'Brien underwent another physical examination with Dr. Pradeep Suri. (A.R. 430-33). The examination was limited because O'Brien complained of pain. (A.R. 431). Dr. Suri assessed kinesophobia and major pain-avoidant behavior. (*Id.*) Dr. Suri encouraged O'Brien to increase his physical activity, and cleared him for return to work full time with the following restrictions: occasionally lift and carry up to 20 pounds; occasionally bend, squat, and climb; and frequently stand, walk, and sit. (A.R. 432). In addition, Dr. Suri noted that he became "quite agitated during discussion of [ ] work recommendations." (*Id.*).

In February 2008, O'Brien returned to Dr. Anas. Dr. Anas noted that his recovery was progressing but he remained unable to perform his regular work duties. (A.R. 408). Dr. Anas recommended further physical therapy. (*Id.*).

At a May 2008 follow-up appointment, Dr. Anas noted that although O'Brien continued to complain of pain, he could walk on his heels and toes, and his deep tendon reflexes were normal. (A.R. 504). Dr. Anas diagnosed lumbar strain and spondylosis. (*Id.*). Dr. Anas

3

recommended that O'Brien refrain from returning to full-time work, but cleared him for "modified light duty" involving lifting up to 25 pounds and avoiding repetitive lifting, bending, and carrying. (*Id.*). Dr. Anas repeated his findings in August and November 2008. (A.R. 503).

In September 2008, O'Brien was examined by Dr. Matthew Gold, a neurologist. (A.R. 420-25). The examination revealed tenderness in a 2-3 centimeter area in O'Brien's left mid-lumbar paraspinal region. (A.R. 423). There was no reaction to straight leg raises, and O'Brien did not exercise excess caution when walking down the office steps. (A.R. 423-24). Dr. Gold concluded that O'Brien had chronic low-back pain that was largely myofascial in nature, but there was nothing to suggest radicular compromise and facet irritation was unlikely. (A.R. 424). Dr. Gold also agreed with Dr. Anas that while O'Brien's pain was limiting, he had not yet reached a medical end result or explored all treatment options. (A.R. 425).

In January 2009, the Commonwealth of Massachusetts Division of Industrial Accidents instructed Dr. Daniel Bienkowski to evaluate O'Brien. (A.R. 415-19). Dr. Bienkowski's physical examination revealed tenderness at the lumbosacral junction and pain with straight leg raises. (A.R. 417). O'Brien had 5/5 motor strength in his legs and no sensory deficits. (*Id.*). Dr. Bienkowski diagnosed a lumbar strain, mild lumbar disc degeneration, and a possible annular tear at the L2-L3 vertebrae. (A.R. 418). Dr. Bienkowski concluded that O'Brien had a partial disability of unknown duration, but suggested he could lift up to 25 pounds; stand and walk; sit for 2-hour intervals; and not climb ladders or scaffolding. (*Id.*).

O'Brien continued to see Dr. Anas every few months. (*See, e.g.*, A.R. 400-04). During that period, O'Brien complained of daily pain in his back but exhibited no neurological symptoms. (*Id.*). In September 2010, Dr. Anas concluded that O'Brien was totally disabled from gainful employment due to lower back pain. (A.R. 400). He repeated that finding in

4

March 2011. (*Id.*).

In May 2011, O'Brien consulted with Dr. Richard Fraser. (A.R. 412-13). Dr. Fraser's physical examination revealed moderate muscle spasm in O'Brien's paralumbar muscles and moderate tenderness in his lumbar spine. (A.R. 413). Dr. Fraser concluded that O'Brien could lift up to 10 pounds; not sit, stand, or walk for long periods; not bend, squat, kneel, crawl, or engage in repetitive motions with his legs; and change positions every 10-15 minutes. (*Id.*). Dr. Fraser further stated that, in his professional opinion, O'Brien was totally disabled from any gainful employment for the foreseeable future. (*Id.*).

In June 2012, O'Brien consulted with Dr. Maria Gorbovitsky of Disability Evaluation Services. (A.R. 560-61). Dr. Gorbovitsky diagnosed lumbar radiculopathy, but did not describe any specific functional limitations. (A.R. 561).

In August 2012, Dr. Anas saw O'Brien again. (A.R. 497). Dr. Anas noted that he continued to suffer from lower back pain, but had no significant leg pain. (*Id.*). The neurological examination again showed no abnormalities. (*Id.*). Dr. Anas reasserted that O'Brien "remain[ed] disabled from gainful employment," but encouraged him to exercise. (*Id.*).

In June 2013, O'Brien saw Dr. John Jao, an advising physician to Disability Determination Services. (A.R. 87). Dr. Jao observed that O'Brien had no focal neurological deficit and could heel and toe walk despite his claims of pain. (A.R. 86). A MRI showed a mild disc bulge, but the central canal and neuroforamen remained open and capacious. (*Id.*). Dr. Jao concluded that on or before his date last insured, O'Brien could perform light work. (A.R. 86-87). Based on those conclusions, Disability Determination Services found that O'Brien could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for about 6 hours in an 8-hour day; sit for about 6 hours in an 8-hour day; and occasionally climb, balance, stoop,

5

kneel, crouch, and crawl. (*Id.*).

In October 2013, Dr. Stephanie Green, an advising physician to Disability Determination Services, reviewed O'Brien's appeal, including records from Dr. Anas, Dr. Gold, Dr. Bienkowski, Dr. Fraser, and others. (A.R. 92-97). She ultimately concurred with Dr. Jao, concluding that on or before his date last insured, O'Brien could perform light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (A.R. 99-100).

2. **Summary of Functional Limitations in Medical Opinions from Relevant Period**

| Physician | Limitations |
|---|---|
| Dr. Suri | • Occasionally lift and carry up to 20 pounds<br>• Occasionally bend, squat, and climb<br>• Frequently stand, walk, and sit |
| Dr. Anas | • Lift up to 25 pounds<br>• Avoid repetitive lifting, bending, and carrying |
| Dr. Bienkowski | • Lift up to 25 pounds<br>• Stand and walk<br>• Sit for 2-hour intervals<br>• No climbing ladders or scaffolding |
| Dr. Fraser | • Lift up to 10 pounds<br>• No sitting, standing, or walking for long periods<br>• No bending, squatting, kneeling, crawling, or engaging in repetitive motions with the legs<br>• Change positions every 10-15 minutes |
| Dr. Jao | • Occasionally lift up to 20 pounds<br>• Frequently lift/carry up to 10 pounds<br>• Stand/Walk for 6 hours<br>• Sit for 6 hours<br>• Occasionally climb, balance, stoop, crouch and crawl |
| Dr. Green | • Occasionally lift up to 20 pounds<br>• Frequently lift/carry up to 10 pounds<br>• Stand/Walk for 6 hours<br>• Sit for 6 hours<br>• Occasionally climb, balance, stoop, crouch and crawl |

3. **Medical Evidence After Date Last Insured**

On October 9, 2013, more than 10 months after December 31, 2012, his date last insured,

6

O'Brien was in a motor vehicle accident. (A.R. 517). After the accident, O'Brien developed mild neck pain and lower back pain. (*Id.*). On October 31, 2013, O'Brien told his physical therapist that he had "normal and pain-free movements and flexibility" during his daily activities prior to the accident. (*Id.*). After the accident, O'Brien's physical therapist observed problems including decreased range of motion, increased muscle guarding, and decreased strength. (A.R. 519).

In April 2014, O'Brien met with Dr. Tony Tannoury and complained that the accident exacerbated his back pain. (A.R. 546). The neck pain had only presented itself after the accident. (*Id.*). A later MRI showed multilevel cervical degenerative changes. (A.R. 542). At a follow-up appointment in July 2014, Dr. Tannoury recommended physical therapy with ibuprofen or tramadol to manage the pain. (A.R. 541-42). In December 2014, O'Brien continued to complain of neck pain, and asked about surgical options. (A.R. 607). Dr. Tannoury suggested a C3 to T1 anterior cervical discectomy and fusion with anterior cervical plating. (*Id.*).

In August 2014, Dr. Robert Cross concluded that O'Brien had chronic major depression dating back to his injury in 2007. (A.R. 604). In July 2016, Dr. Cross stated that he believed O'Brien was "unemployable, and has been for many years." (A.R. 610).

In July 2016, Dr. Sofia Fagan stated that O'Brien's neck pain started after the accident. (A.R. 612). She also indicated that his MRI showed multiple disc herniations. (*Id.*). She suggested that O'Brien was "permanently disabled from gainful employment." (*Id.*).

### 4. **Procedural Background**

In April 2013, O'Brien filed an application for disability insurance benefits, alleging disability beginning on August 27, 2007. (A.R. 250-56). The application was denied by SSA

both initially and on reconsideration. (A.R. 134-36, 140-42). O'Brien testified before an administrative law judge ("ALJ"). (A.R. 53-80). A vocational expert also testified. (A.R. 75-78). The ALJ found O'Brien not disabled in a September 25, 2014 decision. (A.R. 107-125). The Appeals Council granted his request for review, and his case was remanded to the ALJ. (A.R. 130-32). O'Brien testified again before the ALJ on July 26, 2016. (A.R. 43-52). On October 31, 2016, the ALJ again issued a decision finding O'Brien not disabled. (A.R. 18-37). O'Brien's subsequent request for review was denied by the Appeals Council, making the ALJ's October 31, 2016 decision the Commissioner's final decision. (A.R. 2-6).

On November 27, 2017, O'Brien filed this action to review the SSA decision. He filed a motion to reverse or remand the decision on April 2, 2018, and the SSA cross-moved for an order affirming the decision on May 14, 2018.

## II. Standard of Review

### A. Standard of Review

Under § 205(g) of the Social Security Act, this Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The ALJ's finding on any fact shall be conclusive if it is supported by substantial evidence, and must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion," even if the record could justify a different conclusion. *Rodriguez v. Secretary of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); *see also Evangelista v. Secretary of Health and Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987). The ALJ's findings of fact are not conclusive when derived by ignoring evidence, misapplying the law, or making expert findings of fact. *See Da Rosa v. Secretary of Health & Human Servs.,* 803 F.2d 24, 26 (1st Cir. 1986).

In applying the "substantial evidence" standard, the reviewing court must bear in mind that it is the province of the ALJ, not the courts, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence. *Ortiz v. Secretary of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Reversal is warranted only if the ALJ committed a legal or factual error in evaluating the claim, or if the record contains no "evidence rationally adequate . . . to justify the conclusion" of the ALJ. *Roman-Roman v. Commissioner of Soc. Sec.*, 114 Fed. Appx. 410, 411 (1st Cir. 2004); *see also Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). Therefore, "[j]udicial review of a Social Security Claim is limited to determining whether the ALJ used the proper legal standards and found facts based on the proper quantum of evidence." *Ward v. Commissioner of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000). Questions of law, to the extent that they are at issue, are reviewed *de novo*. *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001).

### B. **Standard for Entitlement to Disability Benefits**

In order to qualify for disability benefits, a claimant must demonstrate that he or she is "disabled" within the meaning of the Social Security Act. The Social Security Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to prevent the claimant from performing not only his or her past work, but also any substantial gainful work existing in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1).

An applicant's impairment is evaluated under a five-step analysis set forth in the regulations promulgated under the statute. *See* 20 C.F.R. § 404.1520. The First Circuit has

described the analytical sequence as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment . . . mean[ing] an impairment 'which significantly limits his or her physical or mental capacity to perform basic work-related functions[?]' If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in . . . Appendix 1 [of the Social Security regulations]? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled. . . . If, however, his ability to perform basic work-related functions is impaired significantly (test 2) but there is no 'Appendix 1' impairment (test 3), the [ALJ] goes on to ask the fourth question:
>
> Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

The burden of proof is on the applicant as to the first four inquiries. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [ALJ] may require."). If the applicant has met his or her burden as to the first four inquiries, then the burden shifts to the Commissioner to present "evidence of specific jobs in that national economy that the applicant can still perform." *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). In determining whether the applicant is capable of performing other work in the economy, the ALJ must assess the applicant's residual functional capacity ("RFC") in combination with vocational factors, including the applicant's age, education, and work experience. 20 C.F.R. § 404.1560(c).

### C. The ALJ's Findings

In evaluating the evidence, the ALJ conducted the five-part analysis called for by the

regulations.

At step one, the ALJ found that O'Brien had not engaged in substantial gainful activity from the alleged onset date of August 27, 2007, through December 31, 2012, the date he last met the insured status requirements. (A.R. 20).

At step two, the ALJ found that O'Brien's low back pain due to lumbar disc disease constituted a severe impairment under 20 C.F.R. 416.924(c). (*Id.*). The ALJ further found that the record reflected that O'Brien did not suffer from neck pain, right lower extremity pain, or difficulty with his grip until after his motor vehicle accident on October 9, 2013. (A.R. 21). These issues were therefore deemed not medically determinable as of the date last insured. (*Id.*). In addition, the ALJ found that O'Brien had no medically determinable mental impairment as of that date. (A.R. 22).

At step three, the ALJ found that O'Brien did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 23). In determining that his impairments did not functionally equal a listed impairment, the ALJ considered the state agency's medical consultants' opinions. (*Id.*). Specifically, the ALJ found that "[n]o treating or examining physician has proffered findings that are equivalent in severity to the criteria of" the listings in Appendix 1. (*Id.*).

At step four, the ALJ determined that, through the date last insured, O'Brien was unable to perform any past relevant work, relying on the hearing testimony of the vocational expert. (A.R. 36). The ALJ based his findings "on the record as a whole," giving "great weight to the assessments of Drs. Jao and Green." (A.R. 33). The ALJ found that their assessments restricting O'Brien to occasionally lifting up to 20 pounds, frequently lifting/carrying up to 10 pounds, and

11

standing/walking for up to two hours, were "consistent with the record as a whole." (A.R. 81-90, 91-102). The ALJ also gave "significant weight" to Dr. Anas's August 14, 2008 opinion that O'Brien remained disabled from his work as a carpenter, but was able to perform "light duty with no lifting greater than 25 pounds and avoidance of repetitive bending, lifting, and carrying." (A.R. 33, 411).

At step five, the ALJ found that jobs that O'Brien could perform, based on his age, education, work experience, and RFC, existed in significant numbers in the national economy. (A.R. 36). The ALJ relied on the vocational expert's testimony that someone with his same characteristics could work as a merchandise marker, electrical accessories assembler, or package sorter. (A.R. 37).

The ALJ accordingly found that "[t]he claimant was not under a disability, as defined in the Social Security Act, at any time from August 27, 2007, the alleged onset date, through December 31, 2012, the date last insured." (*Id.*).

### D.     Plaintiff's Objection

O'Brien raises one objection to the ALJ's decision. He contends that the ALJ was required to consider cervical injuries suffered after December 31, 2012, his day last insured, and that his failure to do so demonstrates that his decision is not supported by the record evidence. Specifically, O'Brien alleges that the ALJ did not sufficiently consider impairments suffered as a result of the October 9, 2013 car accident.

The "substantial evidence" standard is one where "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Sousa v. Astrue*, 783 F. Supp. 2d 226, 232 (D. Mass. 2011) (quoting *Ortiz*, 955 F.2d at 769). Accordingly, the ALJ must review all the relevant evidence. SSR 06-03p, 2006 WL 2329939, at

\*6 ("[W]e consider all relevant evidence in the case record when we make a determination . . . whether the individual is disabled."). Nonetheless, the ALJ is not required to discuss every piece of evidence in the record when making his or her decision. *Santiago v. Secretary of Health and Human Servs.*, 1995 WL 30568, at \*4 (1st Cir. Jan. 25, 1995); *Sousa*, 783 F. Supp. 2d at 234 ("The hearing officer is not required to—nor could he reasonably—discuss every piece of evidence in the record."). Moreover, even if a reasonable reviewer could come to a different conclusion than the ALJ, the question on judicial review is whether substantial evidence supports the ALJ's decision. *Robles v. Barnhart*, 2005 WL 1773963, at \*4 (D. Mass. July 22, 2005) ("If substantial evidence exists to support the ALJ's determination, the Court must accept his findings as conclusive even if the record arguably could justify a different conclusion."). A reviewing court may reverse or remand the ALJ's decision only when the ALJ ignored evidence or made legal or factual errors. *Id.*; *Moore v. Astrue*, 2013 WL 812486, at \*2 (D. Mass. Mar. 2, 2013).

O'Brien cannot recover disability benefits "unless he can demonstrate that his disability existed *prior to the expiration of his insured status*." *Tsouvalas v. Berryhill*, 265 F. Supp. 3d 124, 129 (D. Mass 2017) (citing *Cruz Rivera v. Secretary of Health and Human Servs.,* 818 F.2d 96, 97 (1st Cir. 1986)) (emphasis added); *see also Moret Rivera v. Secretary of Health and Human Servs.*, 1994 WL 107870, at \*5 (1st Cir. Mar. 23, 1994) ("It is not sufficient for a claimant to establish that her impairment had its roots before the date that her insured status expired. Rather, the claimant must show that her impairment(s) reached a disabling level of severity by that date."). The ALJ need only consider medical evidence put forth after the expiration of insured status to determine "what light (if any) it sheds on the question whether claimant's impairment(s) reached disabling severity *before* claimant's insured status expired." *Moret Rivera*, 1994 WL 107870, at \*5 (emphasis in original).

O'Brien contends that the ALJ improperly failed to take into consideration physical limitations he suffered because of his October 2013 car accident. However, the ALJ in fact made specific reference to the claimed injuries, stating that "[t]he claimant did not suffer from *neck pain, right lower extremity pain or difficulty with his grip* until after his motor vehicle accident on October 9, 2013." (A.R. 21) (emphasis in original). The ALJ wrote that O'Brien, in speaking to his physical therapist after the accident on October 31, 2013, noted that "prior to the MVA he had normal and pain-free movements and flexibility during all ADL's and functional activities except for LBP at 3/10 pain and left foot numbness as well from prior WC injury." (A.R. 35). In summary, the ALJ found that the medical testimony regarding injuries sustained after December 31, 2012, was not probative, as there was an "absence of evidence that the claimant had any symptoms or limitations associated with his cervical degenerative changes prior to [the car accident on] October 9, 2013." (A.R. 21); *see also Tsouvalas*, 265 F. Supp. 3d at 129.

To the extent there was contrary supporting medical evidence, the ALJ sufficiently addressed it. He gave less weight to Dr. Anas's September 2010 opinion that O'Brien was totally disabled because Dr. Anas had previously found that he could work. (A.R. 33-34). The ALJ noted that Dr. Anas's opinion changed after O'Brien reported "substantial dyslexia" but that there was no supporting medical evidence for that claim. (*Id.*). The ALJ gave partial weight to the opinions of Drs. Suri and Fraser. Dr. Suri's initial recommendation that O'Brien frequently change positions was made in the immediate aftermath of the accident. (A.R. 34). The ALJ found that sufficient time had elapsed such that the recommendation was unnecessary. (*Id.*). Similarly, Dr. Fraser's recommendation that O'Brien restrict himself to lifting 10 pounds and change positions every 10-15 minutes was contradicted by the opinions of Drs. Anas and

14

Bienkowski.  (*Id.*).[2]

Accordingly, the ALJ's final decision was reached with the appropriate level of consideration into injuries sustained after the last insured date and was supported by substantial evidence.  *See Moret Rivera*, 1994 WL 107870, at *5 (finding medical evidence from post-insured period only relevant if demonstrates an impairment before that status expired).  As a result, reversal or remand is not warranted.

## III.     Conclusion

For the foregoing reasons, plaintiff's motion for an order to reverse the decision of the Commissioner or remand to the Commissioner is DENIED, and defendant's motion to affirm the decision of the Commissioner is GRANTED.

**So Ordered.**

Dated:  June 26, 2018

/s/  F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

---

[2] The ALJ also gave little weight to the opinion of Paul Blatchford, a vocational analyst, because it contradicted the assessments of Drs. Jao and Green, who he found more credible.  (A.R. 35).  In addition, the ALJ gave no credit to the July 12, 2016 letter written by Dr. Fagan, because there was no record of her treating O'Brien.  (*Id.*).  The ALJ did not credit O'Brien's own testimony because it was inconsistent with the medical record.  (*Id.*).  Finally, to the extent O'Brien relies on his depression as a basis for remand or reversal, there was no evidence of any such impairment prior to his date last insured.  (A.R. 22).